**SULAIMANLAW GROUP**
Alexander J. Taylor
2500 South Highland Ave
Suite 200
Lombard, Illinois 60148
Telephone: 331-307-7646
Facsimile: 630-575-8188
Email: ataylor@sulaimanlaw.com
*Attorney for the Plaintiff*

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA
# SACRAMENTO DIVISION

| | |
|---|---|
| CARLOS R. BARRIOS,<br><br>Plaintiff,<br><br>v.<br><br>GE CREDIT SOLUTIONS, LLC<br><br>Defendant. | Case No.<br><br>**COMPLAINT FOR DAMAGES**<br><br>1. **VIOLATION OF THE CREDIT REPAIR ORGANIZATIONS ACT, 15 U.S.C. §1679 *ET SEQ.***<br><br>2. **VIOLATION OF THE CALIFORNIA CREDIT SERVICES ORGANIZATIONS ACT, CAL. CIV. CODE §1789.10 *ET SEQ.***<br><br>JURY TRIAL DEMANDED |

## **COMPLAINT**

**NOW COMES** Carlos R. Barrios ("Plaintiff"), by and through his undersigned attorney, complaining as to the conduct of GE Credit Solutions LLC ("GE" or "Defendant") as follows:

1

## NATURE OF THE ACTION

1. Plaintiff brings this action seeking redress for Defendants' violations of the Credit Repair Organizations Act ("CROA") pursuant to 15 U.S.C. §1679 *et seq.*, and the California Credit Services Organizations Act ("CCSOA") pursuant to Cal. Civ. Code §1789.10 *et seq*.

## JURISDICTION AND VENUE

2. Subject matter jurisdiction is conferred upon this Court by the CROA, and 28 U.S.C. §§1331 and 1337, as the action arises under the laws of the United States.

3. This Court has supplemental jurisdiction over Plaintiff's state law claim pursuant to 28 U.S.C. §1367(a).

4. Venue is proper in this Court pursuant to 28 U.S.C. §1391 as Plaintiff resides in the Eastern District of California and all of the events or omissions giving rise to the claims occurred in the Eastern District of California.

## PARTIES

5. Plaintiff is a consumer, and a natural person over 18-years-of-age who, at all times relevant, resides in the Eastern District of California.

6. Defendant is a credit repair organization that claims in its contract to "help [consumers] increase their credit scores." Defendant is a professional corporation that maintains its principal place of business at 400 N. Ervay Street, Suite 130534, Dallas, TX 75313.

7. Defendant acted through its agents, employees, officers, members, directors,

2

heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives and insurers at all times relevant to the instant action.

### FACTS SUPPORTING CAUSE OF ACTION

8. In March 2022, Plaintiff had a number of debts which were impacting his credit, prompting him to begin looking for companies who may be able to assist him in improving his credit and resolving his obligations.

9. After diligent research, Plaintiff happened upon Defendant due to its representations that it could help consumers improve their creditworthiness.

10. As such, Plaintiff spoke with a representative of Defendant who advised Plaintiff that it would be able to remove negative information from his credit profile with each of the major credit reporting agencies.

11. It was further represented to Plaintiff that, following his successful completion of Defendant's program and after paying all necessary fees for Defendant's services, Defendant would be able to provide additional credit services designed to further improve Plaintiff's credit history and creditworthiness.

12. On March 21, 2022, Plaintiff entered into an agreement in connection with Defendant's credit repair services. The agreement stated that Plaintiff will be responsible for paying a sum of $500 to Defendant as an initial service fee.

13. After months of attempting to contact Defendant regarding its services being rendered to no avail, Defendant finally contacted Plaintiff in June 2022 and stated that it would be able to remove negative items impacting Plaintiff's credit files for an

3

additional fee of $150.

14. Despite paying the additional $150 fee to delete a trade line, Plaintiff discovered that Defendant failed to do so and did not make any progress in relation to improving Plaintiff's creditworthiness.

15. After months of not contacting Plaintiff, Defendant failed to correct any of the inaccurate information which he wanted addressed through Defendant's dispute process, none of the inaccurate information had been removed from Plaintiff's credit reports.

16. Relying upon Defendant's representations regarding the nature and efficacy of its services, Plaintiff received a threat of a lawsuit by two of the creditors reporting on his consumer credit files.

17. Plaintiff ended up settling with the two creditors to avoid a lawsuit against him.

18. Eventually, after making payments to Defendant, Plaintiff became extremely frustrated and distressed that he had been making payments yet not seeing any results on the part of Defendant.

19. Defendant's failure to sufficiently get any of the inaccurate information removed from Plaintiff's credit reports underscores the generally deceptive manner in which Defendant held out the efficacy of its services to Plaintiff.

20. Furthermore, it was deceptive for Defendant to represent the effectiveness of its services given that the credit reporting agencies are under no obligation to respond to the disputes submitted by Defendant or Credit Repair Organizations in general.

21. Pursuant to 12 C.R.F. §1022.43(b)(2), the credit reporting agencies are under no obligation to respond to disputes submitted by credit repair organizations like Defendant.

22. As such, Defendant misrepresented the nature of its services and that the credit reporting agencies would be obligated to respond to Defendant's disputes in a manner triggering the credit reporting agencies' investigatory obligations.

23. Even more, Defendant explicitly guaranteed results that Plaintiff remove older trade lines from his credit reports yet failed to do so.

24. Ultimately, due to the fact that no positive changes occurred to Plaintiff's credit files, Plaintiff terminated his services with Defendant.

25. Following Plaintiff's termination of his relationship with Defendant, Plaintiff spent months attempting to dig himself out of the hole created by Defendant's deficient provision of credit repair services.

## DAMAGES

26. Plaintiff suffered severe emotional distress, as well as significant out of pocket expenses and persistently depressed credit scores as a result of Defendant's deceptive and misleading conduct.

27. Frustrated, distressed, and concerned over Defendant's conduct, Plaintiff spoke with the undersigned regarding his rights.

28. Plaintiff has suffered concrete harm as a result of Defendant's actions, including but not limited to, emotional distress, aggravation, mental anguish, lost

time, out of pocket expenses, pecuniary loss stemming from the payments made to Defendant, denial of the benefit of his bargain, making payments to Defendant after relying on false and deceptive representations, as well as numerous violations of his federally protected interests to be free from deceptive and misleading conduct on the part of purported credit repair organizations.

### COUNT I - VIOLATIONS OF THE CREDIT REPAIR ORGANIZATIONS ACT

29. Plaintiff repeat and reallege paragraphs 1 through 28 as though fully set forth herein.

30. Plaintiff is a "consumer" as defined by 15 U.S.C. §1679a(1) of the CROA.

31. Defendant is a "credit repair organization" as defined by §1679a(3) of the CROA, as it is a person who uses any instrumentality of interstate commerce or the mails to sell, provide, or perform any service, in return for the payment of money or other valuable consideration, for the express or implied purpose of improving a consumer's credit, credit history, or credit rating, or providing assistance to any consumer with regard to any activity or service for the purpose of improving a consumer's credit.

**a. Violations of CROA §1679b(a)**

32. The CROA, pursuant to 15 U.S.C. §1679b(a)(3) prohibits any person from "mak[ing] or us[ing] any untrue or misleading representation of the services of the credit repair organization." Additionally, pursuant to 15 U.S.C. §1679b(a)(4), any person is prohibited from "engag[ing], directly or indirectly, in any act, practice, or

6

course of business that constitutes or results in the commission of, or an attempt to commit, a fraud or deception on any person in connection with the offer or sale of the services of the credit repair organization."

33.    Defendant violated the above referenced provisions of the CROA through its misrepresentations and deception as to the nature of the credit repair services it could provide Plaintiff. In order to get Plaintiff to agree to utilize Defendant's services, Defendant touted the efficacy of its credit repair services and that Plaintiff could expect an improved credit score as long as he made payments for its services. Plaintiff made his such payments; however, Defendant failed to improve Plaintiff's credit.

34.    Further, Defendant violated the CROA when it deceptively represented to Plaintiff that its disputes would be responded to by the credit reporting agencies. Inherent with Defendant's representations was the notion that there would be an obligation for an investigation to be triggered by Defendant's submission of a credit dispute on Plaintiff's behalf. However, pursuant to 12 C.F.R. §1022.43(b)(2), the credit reporting agencies are under no obligation to respond to disputes submitted by credit repair organizations like Defendant.

35.    Defendant further violated the CROA through its deceptive and misleading conduct surrounding the way it charges consumers. Upon information and belief, Defendant charges consumers for services before fully and completely performing those services in the manner they were represented, yet nevertheless attempts to disclaim such conduct in its contract by saying that it does not charge consumers

7

before fully completing its services. This conduct is part of deceptive scheme where Defendant seeks to insulate itself from liability under the CROA through contractual language that is inherently misleading and contradictory to reality. Further, Defendant knows that it is charging for consumers for ineffective services, yet will seek to point to its "disputes" sent as purportedly justifying the exorbitant fees it charges consumers.

### b. Violation of CROA §1679b(b)

36.  The CROA, pursuant to 15 U.S.C. §1679b(b), states that "[n]o credit repair organization may charge or receive any money or other valuable consideration for the performance of any service which the credit repair organization has agreed to perform for any consumer before such service is fully performed."

37.  Defendant violated §1679b(b) as it charged and received money from Plaintiff in exchange for the performance of its services before such services were fully performed. Defendant has maintained Plaintiff's payments despite failing to fully perform the services justifying Defendant's retention of such fees.

**WHEREFORE** Plaintiff, Carlos R. Barrios, respectfully requests that this Honorable Court:

  a. Declaring that the practices complained of herein are unlawful and violate the aforementioned bodies of law;
  b. Awarding Plaintiff actual damages to be determined at trial, as provided under 15 U.S.C. § 1679g(a)(1);
  c. Awarding Plaintiff punitive damages, in an amount to be determined at

8

    trial, as provided under 15 U.S.C. § 1679g(a)(2)(A);

  d. Awarding Plaintiff costs and reasonable attorney fees as provided under 15 U.S.C. §1679g(a)(3); and

  e. Awarding any other relief as this Honorable Court deems just and appropriate.

### COUNT II - VIOLATIONS OF THE CALIFORNIA CREDIT SERVICES ORGANIZATIONS ACT

38. Plaintiff restates and realleges paragraphs 1 through 37 as though fully set forth herein.

39. Plaintiff is a "buyer" as defined by Cal. Civ. Code §1789.12(c).

40. Defendant is a "credit services organization" as defined by Cal. Civ. Code §1789.12(a).

 **a. Violation of CCSOA §1789.13**

41. Pursuant to §1789.13(b), a credit services organization cannot "fail to perform the agreed services within six months following the date the buyer signs the contract for those services."

42. Defendant violated §1789.13(b) when it failed to fully perform the agreed upon services within 6 months of Plaintiff agreeing to utilize its services. Defendant tricked Plaintiff into making payments and still failed to completely perform the agreed upon services.

43. The CCSOA, pursuant to Cal. Civ. Code §1789.13, provides a list of prohibited conduct for credit services organizations.

9

44. Pursuant to §1789.13(g), credit services organization cannot "[m]ake or use untrue or misleading representations in the offer or sale of the services of a credit services organization." Similarly, pursuant to §1789.13(h), a credit services organization cannot "[e]ngage, directly or indirectly, in an act, practice, or course of business that operates or would operate as a fraud or deception upon a person in connection with the offer or sale of the services of a credit service organization."

45. As outlined above, Defendant violated the above referenced provisions of the CCSOA in much the same way it violated 15 U.S.C. §§1679b(a)(3)-(4).

**WHEREFORE**, Plaintiff Carlos R. Barrios, respectfully requests that this Honorable Court enter judgment in his favor as follows:

  a. Declaring that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;
  b. Awarding Plaintiff actual damages pursuant to Cal. Civ. Code §1789.21(a);
  c. Awarding Plaintiff punitive damages pursuant to Cal. Civ. Code §1789.21(a);
  d. Awarding Plaintiff's costs and reasonable attorney fees, pursuant to Cal. Civ. Code §1789.21(a); and
  e. Awarding any other relief as this Honorable Court deems just and appropriate.

**Plaintiff demands trial by jury.**

Date: November 3, 2022

Respectfully submitted,

**Carlos R. Barrios**

By: */s/ Alexander J. Taylor*

Alexander J. Taylor, Esq.
Atlas Consumer Law
2500 S. Highland Avenue, Suite 200
Lombard, Illinois 60148
Telephone: 331-3077646
Facsimile: 630-575-8188
Email: ataylor@sulaimanlaw.com